9 N.J. Super. 365 (1950)
74 A.2d 370
GERTRUDE McSTAY, ADMINISTRATRIX AD PROSEQUENDUM OF JAMES McSTAY AND FRANCIS J. McSTAY, JR., DECEASED, AND GERTRUDE McSTAY, GENERAL ADMINISTRATRIX OF THE ESTATE OF FRANCIS J. McSTAY, JR., DECEASED, PLAINTIFF,
v.
EDWARD J. PRZYCHOCKI, DEFENDANT.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided April 19, 1950.
*368 Messrs. Nugent & Rollenhagen, by Mr. John P. Nugent, attorneys for plaintiff.
Mr. David Green, by Mr. Harry R. Rey, attorney for defendant.
PROCTOR, J.S.C.
The above matter comes before the court on defendant's motion to set aside or reduce two verdicts, each in the amount of $6,000, in favor of the administratrix ad prosequendum of the estates of Francis McStay and James McStay, on the ground that they are excessive.
The decedents, Francis McStay, age ten, and James McStay, age twelve, were killed as the result of being struck by an automobile owned and operated by the defendant. Defendant admitted liability, and the only question submitted to the jury was the extent of money damages sustained by the next of kin of decedents.
The decedents left surviving their father, who died some time after their death; their mother, thirty-five years of age; a brother, Robert, age five; a brother, William, age three; and a sister, Mary Anne, age nine months. The decedents were average boys, who helped their mother around the house, and had good marks in school. There also was testimony that James had earned money delivering newspapers.
The action is brought under our Death Act, R.S. 2:47-5, and distribution is to be made pursuant to R.S. 2:47-4 and R.S. 3:5-4 equally among the parents and brothers and sister.
I have examined all the reported cases commencing with the turn of the century down to the present relating to the *369 question of compensation for the death of a minor, not a prodigy, and it appears that the range of compensation in such cases has been $1,000 for the death of a boy four years and four months of age in the case of Graham v. Consolidated Traction Co., 65 N.J.L. 539 (Sup. Ct. 1900), to $6,000 for the death of a boy thirteen years of age in the case of Jorgensen v. Wilberg, 6 N.J. Misc. 79 (Sup. Ct. 1928). In the depression years, even though the purchasing power of the dollar was greater, similar awards for the deaths of minors were not markedly lower than those in the instant case. See Sakos v. Byres, 11 N.J. Misc. 527 (Sup. Ct. 1933); affirmed, 112 N.J.L. 256 (E. & A.) ($5,000 for the death of a nine-year-old boy reduced to $4,500); Scott-Huntington v. Pearson, 11 N.J. Misc. 642 (Sup. Ct. 1933) ($4,425 for the death of a ten-year-old boy held not excessive). There are also more recent, unreported cases showing an adjustment in verdicts to the economic factors in the period of litigation.
Therefore, it would seem that our courts have made allowance for fluctuation in the value of the dollar with the changing economic trends over the past half century. It may well be that the jury considered the present deflated value of the dollar. Judicial notice thereof may be properly taken and the jury, in the exercise of its judgment, could have properly considered it in examining damages against the defendant. Nusser v. United Parcel Service of N.Y., Inc., 3 N.J. Super. 64 (App. Div. 1949); Bowes v. Public Service Railway Co., 94 N.J.L. 378 (Sup. Ct. 1920).
Defendant argues that the sole measure of damages is the amount the decedents would have earned until they reached the age of twenty-one, less the amount it would cost the parents to maintain, clothe and educate them. If this proposition as the sole measure of damages is sound, it is difficult to understand how the wrongful death of any child (excluding a prodigy or a genius) would warrant a verdict of any more than nominal damages. Indeed, I am sure that most parents today would agree, regardless of their standard of living, that the cost of maintaining and educating a child *370 (from the time he is ten or twelve) exceeds the earnings the child would turn over to them up to his arriving at the age of twenty-one. The statute (R.S. 2:47-5) refers to "pecuniary injuries resulting from such death to * * * next of kin of the deceased." "Pecuniary injury" is not limited to loss of earnings. "Pecuniary injury" is the deprivation of the reasonable expectancy of a pecuniary advantage which would have resulted by a continuation of the life of the deceased. The word "pecuniary" is used in distinction to those injuries to the affections and sentiments which arise from the death of relatives and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes also those losses which result from the deprivation of the society and companionship of relatives which are equally incapable of being defined by any recognized measure of value. Carter v. West Jersey & Seashore R.R. Co., 76 N.J.L. 602 (E. & A. 1908). However, the parents sustain a different kind of loss from the death of their children. While they owe their children the duty of nurture and of intellectual, moral and physical training, they can expect services or chores pertaining to the household from the children over and above any earnings the children might receive. For this loss the parents are entitled to just compensation from a wrongdoer. The loss of a mother's nurture of children is a pecuniary injury to the children. Clark v. Prime, 18 N.J. Misc. 226 (Bergen County Circuit Court 1940). As a corollary, the deprivation of the child's services to the parents is a pecuniary injury to them. Moreover, the jury could consider the pecuniary loss the mother suffered by being prospectively deprived of such contributions to her support as her sons might make after attaining majority. This is particularly true of the instant case, where the surviving mother with her three younger children ordinarily would depend on the two oldest sons for support. See Morhart v. North Jersey Street Ry. Co., 64 N.J.L. 236 (E. & A. 1900).
The surviving brothers and sister were younger than the decedents. While in a strict legal sense it is true the *371 decedents owed them no duty of personal service, it cannot be denied that the brothers and sister have suffered a pecuniary loss through the premature deaths of their elder brothers. Cf. Bowen v. Healy's, Inc., 16 N.J. Misc. 113 at 121 (Sup. Ct. 1938); Kopko v. N.Y. Live Poultry Co., 2 N.J. Misc. 485 (Hudson County Common Pleas Court); affirmed, 3 N.J. Misc. 498 (Sup. Ct. 1925); affirmed, 102 N.J.L. 440 (E. & A. 1926). Furthermore, an elder brother's assistance such as helping with lessons and kindred matters are elements of a pecuniary advantage to a younger brother and sister. These services, while difficult of appraisal, possess a value that the jury had a right to take into consideration. Nor is it essential that there be any legal obligation to render the services. Henry v. Prendergast, 94 N.E. 1015 (Ind. 1911).
The verdicts were not so excessive as to justify an implication that they were the result of mistake, partiality, passion or prejudice and, therefore, I do not feel that I can substitute my judgment for that of the jury. See Nusser v. United Parcel Service of N.Y., Inc., supra. The motion is denied.